IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MOLLY GUINAN : CIVIL ACTION
:
v. :
: NO. 08-0228
A.I. DUPONT HOSPITAL FOR :
CHILDREN, et al. :

**SURRICK, J.** AUGUST 28, 2009

## MEMORANDUM

Presently before the Court are Plaintiff's Motion to Stay Proceedings Pending Appeal (Doc. No. 78) and Defendants' Motion for Reconsideration of Denial of Summary Judgment on Medical Monitoring Claim (Doc. No. 83). For the following reasons, the Motions will be denied and the Court's Orders granting in part and denying in part Defendants' motions for summary judgment (Doc. Nos. 79, 80, 81) will be certified for appeal.

**I. BACKGROUND**

Plaintiff Molly Guinan is one of several infants who had a Cheatham Platinum stent ("CP stent") implanted in her heart by doctors at the A.I. duPont Hospital for Children in Wilmington, Delaware, to correct a congenital defect.[1] The CP stent, a Class III medical device, did not have FDA pre-market approval at the time that the doctors implanted it in Plaintiff. After the procedure, Plaintiff's condition worsened. She developed plastic bronchitis and protein losing

---

[1] The facts of this case are set out in greater detail in the two opinions addressing Defendants' motions for summary judgment. *See Guinan v. A.I. duPont Hosp. for Children (Guinan I)*, 597 F. Supp. 2d 517, 520-25 (E.D. Pa. 2009); *Guinan v. A.I. duPont Hosp. for Children (Guinan II)*, 597 F. Supp. 2d 485, 490-93 (E.D. Pa. 2009).

enteropathy, and her parents transferred her to a different hospital where her new doctors performed a procedure to fenestrate (i.e., created an opening in) the CP stent. The CP stent remains in Plaintiff's body.

In October 2004, Plaintiff and two other children, Teague Conway and Mark Hess, who also had CP stents implanted in them in the 2002-2003 timeframe brought this lawsuit as a class action, alleging harm arising from the use of the CP stent. *See* Complaint, *Conway v. A.I. duPont Hosp. for Children*, No. 04-4862 (E.D. Pa. Oct. 15, 2004). The named plaintiffs eventually decided to dismiss their class action claims and pursue three individual actions. They continued, however, to rely on the non-class action allegations in the Complaint, and they jointly conducted discovery in all three actions. The Complaint contains six counts alleging six separate causes of action against each Defendant: Negligence (Count I); Fraud and Intentional Misrepresentation (Count II); Assault and Battery (Count III); Strict Liability (Count IV); Breach of Express and Implied Warranties (Count V); and Medical Monitoring (Count VI). In 2007, before the plaintiffs decided to pursue their actions individually, we dismissed certain theories under Count I and Counts III, IV, and V in their entirety as to two of the Defendants, Dr. William Norwood and Dr. John Murphy. *Conway v. A.I. Dupont Hosp. for Children* (*Conway I*), No. 04-4862, 2007 U.S. Dist. LEXIS 10563 (E.D. Pa. Feb. 14, 2007).

On February 6, 2009, we issued two opinions addressing the Defendants' motions for summary judgment in Plaintiff's case. The first addressed Plaintiff's claims against the healthcare provider Defendants, A.I. duPont Hospital, Dr. William Norwood, and Dr. John Murphy. *See Guinan I*, 597 F. Supp. 2d at 521 & n.1, 541. The second addressed Plaintiff's claims against the manufacturer of the CP stent, NuMed, Inc., and its CEO, Allen Tower. *See*

2

*Guinan II*, 597 F. Supp. 2d at 491-93, 517. We granted summary judgment in Defendants' favor on Counts I through V and granted summary judgment in favor of Allen Tower on all counts. We denied summary judgment on Plaintiff's medical monitoring claim as to the healthcare provider defendants and NuMed. Plaintiff filed the Motion to Stay Proceedings on February 9, 2009, three days after the summary judgment opinions issued. (Doc. No. 78.) In her Motion to Stay, Plaintiff informed the Court and the Defendants that she was filing an appeal that same day. (*See id.* ¶ 3.) On February 11, 2009, Defendants filed the Motion for Reconsideration, seeking the reconsideration of the denial of summary judgment on Plaintiff's medical monitoring claim. Plaintiff's Notice of Appeal was docketed two days later, on February 13, 2009. (*See* Doc. No. 84.)

All three Plaintiffs rely on the same underlying legal theories in the Complaint. While the facts in each case are unique, our decision to grant summary judgment in each instance was based upon the requirements of Delaware's Health Care Malpractice Insurance and Litigation Act, 18 Del. C. §§ 6801, *et seq.*, which we applied consistently in all three cases. Likewise, our determination that Plaintiff and Aaron Hess could proceed with their medical monitoring claims was based on a common prediction that the Delaware Supreme Court would recognize such a claim if presented with the facts before us. At this point, the Conway case is ripe for appeal, as is the Hess case.[2] By this Memorandum and Order, Plaintiff's case is placed in a similar position

---

[2] Teague Conway voluntarily dismissed his medical monitoring claim and settled with Allen Tower and NuMed. The summary judgment opinion in his case, which issued January 6, 2009, dismissed all outstanding claims against the healthcare provider defendants. On January 16, 2009, Teague Conway filed a motion for reconsideration of the January 6 Order. While that motion was pending, he filed an appeal. The Third Circuit stayed the appeal pending disposition of the motion for reconsideration. On May 22, 2009, we denied the motion. Aaron Hess also settled with Allen Tower. In the Hess case, defendants filed a petition to have the court certify

3

so that all three cases are now ready for review by the Third Circuit.

## II. ANALYSIS

### A. Defendants' Motion For Reconsideration

Defendants ask us to reconsider our determination that Plaintiff can state a medical monitoring claim because "the Court may have overlooked a crucial argument that" Defendants raised in their summary judgment motions: "whether [Plaintiff] can sustain any claim for medical monitoring absent evidence that a reasonable physician would prescribe a monitoring regime for [Plaintiff] different from that which would be prescribed had she not received the [CP] stent . . . ." (Doc. No. 83 at 8.) There are three situations in which a party is entitled to have the court reconsider a judgment: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe, by Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 678 (3d Cir. 1999) (citing *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)); *see also Interdigital Commc'ns, Corp., v. Fed. Ins. Co.*, 403 F. Supp. 2d 391, 393 (E.D. Pa. 2005). Defendants' theory that we overlooked a crucial argument falls in the third category.

We were fully aware of Defendants' argument and considered it when we made our summary judgment determination. In fact, we discussed this argument in the Mark Hess opinion.

---

the summary judgment order pursuant to 28 U.S.C. § 1292(b) and Federal Rule of Civil Procedure 54(b). Aaron Hess filed a response in support of the petition. In a memorandum and order (the "Hess Memorandum and Order") that will issue with this Memorandum and Order, we certify questions to the Third Circuit regarding Aaron Hess's medical monitoring claim and direct entry of final judgment on Counts I through V. Thus, the Hess case is ripe for appellate review.

4

*See Hess v. A.I. Dupont Hosp. for Children*, No. 08-0229, 2009 U.S. Dist. LEXIS 19492, at *40-41 (E.D. Pa. Mar. 7, 2009); *see also Redland Soccer Club v. Dep't of the Army*, 696 A.2d 137, 198 (Pa. 1997) (observing that "[o]n remand . . . the trier of fact is free to weigh the evidence presented by both parties and to decide if the . . . Plaintiffs have proven each element of their claim for medical monitoring"). Accordingly, the Motion for Reconsideration will be denied.

### B.   28 U.S.C. § 1292(b) Certification

Although neither party has moved for certification of the orders granting in part and denying in part Defendants' summary judgment motion, certification is appropriate. A district court may certify an interlocutory order for appeal under 28 U.S.C. § 1292(b) *sua sponte*. *Russ-Tobias v. Pa. Bd. of Prob. & Parole*, No. 04-0270, 2006 U.S. Dist. LEXIS 8062, at *97 n.6 (E.D. Pa. Mar. 2, 2006) ("While neither party has formally moved for certification of th[e] interlocutory order [before the court, the court has] the authority under Section 1292(b) to certify the order *sua sponte*." (citing *Amerisourcebergen Drug Corp. v. Meier*, No. 03-CV-6769, 2005 WL 2645000, at *3 (E.D. Pa. Oct. 14, 2005); *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 494 F. Supp. 1190, 1243 (E.D. Pa. 1980))). In order to certify an interlocutory order for appeal, (1) the order must involve a controlling question of law; (2) there must be substantial ground for difference of opinion as to the controlling question of law; and (3) immediate appeal must have the potential to materially advance the ultimate termination of the litigation. *See Katz v. Carte Blanche Corp.*, 496 F.2d 747, 753-54 (3d Cir. 1974) (en banc) (discussing history of interlocutory appeals and § 1292), *cert. denied*, 419 U.S. 885 (1974). For the reasons set forth in the Hess Memorandum and Order that will issue simultaneously with this Memorandum and Order, each of the three elements is satisfied. Certification pursuant to § 1292(b) is appropriate.

### C. Entry of Final Judgment Pursuant to Rule 54(b)

Neither party has moved for entry of final judgment on Counts I through V. As with certification under § 1292(b), a district court may *sua sponte* direct entry of final judgment under Federal Rule of Civil Procedure 54(b). *See Intergraph Corp. v. Intel Corp.*, 253 F.3d 695, 699 (Fed. Cir. 2001) ("[Plaintiff-Appellant] argues that the district court had no authority *sua sponte* to enter judgment under Rule 54(b). That is incorrect. 'Whether to allow an interim appeal is best decided by the trial court.'" (quoting *State Treasurer v. Barry*, 168 F.3d 8, 14 (11th Cir. 1999))); *Kimberly-Clark Corp., Brown-Bridge Div. v. E. Fine Paper, Inc.*, 559 F. Supp. 815, 836 n.2 (D. Me. 1981) ("The Court properly may determine *sua sponte* whether to include in the judgment a Rule 54(b) certification."). In order to do so, the court must find that there has been a final judgment on a claim and that there is no just reason for delay. *Berckeley Inv. Group, Ltd., v. Colkitt*, 455 F.3d 195, 202 (3d Cir. 2006) (*citing Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7-8 (1980). The Hess Memorandum and Order sets forth in detail the reasons for the entry of a final judgment pursuant to Rule 54(b) as to Counts I through V. The reasons apply equally here.[3]

### III. CONCLUSION

For the foregoing reasons, Defendants' Petition for Certification will be granted.

An appropriate Order will follow.

BY THE COURT:

R. Barclay Surrick, J.

---

[3] As to Defendant Allen Tower, entry of final judgment on Counts I through VI is warranted, since we granted summary judgment on all claims against him.